Thank you, Your Honor. May it please the court. First, I want to thank all of you for coming today. I want to thank the court and the clerks for granting oral argument in the case of the solicitor and I may perhaps bring to more fullness and more light the arguments we made in our briefs. Secondly, it was brought to my attention just before the session by Associate Solicitor Stewart that page A11 is missing from your joint appendix. And fortunately that does not have a bearing on this case. That's why we both missed it. That page relates to a rejection that had been withdrawn by the board. Okay, if I may start then. Today's case is classically determined by the Patent and Trademark Office to be a matter of a printed matter rejection. And the black letter case law would be found in In Re GULAC and GULAC then states that the printed matter must have a functional relationship with the underlying substrate in order for the printed matter to be given any patentable weight. In this particular case, we have fishing tackle, for example, a fishing lure that has a certain graphic web, for example, a postage stamp or a portrait of an individual person or group of persons in combination. And the Patent and Trademark Office, the board, determined that the graphic web was printed matter, which is correct. But didn't the office treat the printed matter and pictures in the same way? The pictures, your honor? Well, your claims are not limited to printed matter. And some of the references that were cited were not printed matter but were illustrations or pictures of various sorts. The claims, the graphic web that is in the claims on appeal relate to only certain graphic webs, which is to say a postage stamp, a postal franking, a trading stamp, or a portrait of an individual person or persons. And that is what the claims require in its broadest claim, claim number one. But there were other fishing lures that had other types of images invented by other people that had other types of images on them. Yes, your honor. Holographic images, things like that. The prior art cited against the claims were holographic images of fish and animals such as, an example is a grasshopper. So these lures are intended to attract fish. The novelty of this is that the images are not functional but entirely fanciful? Not entirely fanciful but they do create amusement because there is, for example, a postage stamp available that has an image of a fish on it. But the point of the graphic web is to combine something that you indicate that is fanciful but is otherwise not connected in the classic sense between a lure and a web. I'm just trying to pinpoint what you think is new. What's new is the content of the image and not the process of putting an image on a fishing lure. The process is not being claimed, your honor. So it's just the fact that you've got postage stamps and no one else has ever done that? That is correct but taken as a whole. So I take it that if there were prior art with a picture not of a grasshopper or a worm or something attractive to fish, but just a picture of a cat, that you would not regard that as prior art that invalidated your patent or rendered your application not patentable? If there were a cat, for example, on a decoy or a lure, if that were the case and that were prior art, yes, that would be prior art but I did not see that. But on the other hand, a cat is not a person. No, no, that's right. So I guess my question really is, are you saying that your application is patentable because the pictures do not include, for example, pictures of animals? If there were such a prior art, the picture of a cat on a lure, that your application would be patentable notwithstanding that prior art? No, I'm not saying that, Your Honor, because there are, for example, pictures of animals on postage stamps and these would be included within the scope of the claims. But this would be a picture of a cat not on a postage stamp. I mean, you said that, well, there are pictures of fish on postage stamps as well, but just a plain picture of a cat not on a postage stamp. Is not within the scope of the claim. Okay, but was it invalid, I mean, do you think it would be enough to keep you from getting the patent? I do not believe so, Your Honor. As you can see, Rudy. So if you said in your claim, suppose you had a defendant claim to pictures of American presidents, okay, and the prior art included pictures of a Secretary of State, you would say that does not render your claim unpatentable? As an applicant, I would argue that, yes. Okay, but that's your legal position you're taking here. The legal position I'm actually taking, Your Honor, is simply that these particular graphic webs, in combination with the certain types of fishing tackle taken as a whole, are not rendered obvious by the prior art. On the other hand, the Director of the Patent Office is saying that the graphic web, because it does not relate to fishing tackle, not necessarily, is entitled to zero patentable weight. And I say that that is legally incorrect, and as well, even if we did not want to perhaps tinker with the GULAC decision, is not supported by substantial evidence because the substantial evidence test is a reasonable test, and it would be unreasonable to jettison the applicant's stated utility of amusement, which is found in the specification, and is also supported by declaration evidence, albeit from family and friends, there is support and there's nothing in the record to show otherwise. There's no rejection under Section 112 for lack of enablement for such a utility, and it has been plainly supported. Mr. Rudy, you have some claims allowed, is that right? Yes, Your Honor. And so what you are seeking is broader protection? Yes, Your Honor. And what I have been trying to hear in your discussion is where the differences are, whereby with the broader protection you seek, you are nonetheless avoiding the issues of obviousness for that broad scope? I believe so, Your Honor. I believe I am doing that because these particular graphic webs are not subject to a novelty rejection. There is no anticipation in the application, and there is support in the specification and also declaration evidence that shows that this particular combination does evoke a certain sense of amusement. Which is a legitimate utility. All right. Let's hear from the Office of the U.S. Department of Defense.  As this Court has repeatedly stated in Gulak, Lowry, and the Guide, to name just a few cases, adding new printed matter to an old product is not enough to distinguish the claim unless that printed matter has a new and unobvious functional relationship to the underlying product. Mr. Rudy's image does not. The printed matter has to be so integral to the underlying device that, in essence, it's acting as a structural element. Mr. Rudy's image is not acting in this manner. In a similar case on Ray Maguy, an applicant attempted to patent a kit containing a chemical agent and instructions on how to use it. The prior art also disclosed a kit containing the same chemical agent with different instructions. And this Court said that a patent applicant can't obtain a patent on an existing product by attaching new printed matter to it. The Court wisely cautioned that if such an approach were allowed, anyone could continue patenting a product indefinitely by adding new printed matter to it. That is precisely the problem here. If Mr. Rudy were to prevail, anyone could come to the Patent Office and continue… Yes, Your Honor. Yes, Your Honor. Another way of looking at the case without focusing exclusively on the printed matter is thinking about what Mr. Rudy is asserting, that essentially he is in new use for an old product. His new use is that it's a novelty item over an existing product that's just a plain fishing lure. But even this does not make his idea patentable. As this Court has stated in In Re Schreiber, recitation of a new intended use for an old product does not make a claim to an old product patentable. And what about the statutory requirement to consider the invention as a whole? Not whether one little piece of it may or may not have its own legal standards. Yes, Your Honor. And I think that explains why the Office didn't make a rejection under 101. It didn't simply exclude the printed matter and then find that there was nothing patentable. It looked at the combination and compared it against different combinations in the prior art and found that the new element that Mr. Rudy was adding was not sufficient to distinguish it over that art. Essentially, we believe that if Mr. Rudy has a new idea, it's more akin to an ornamental design for an old product, which would be the proper subject matter of design patent, not a utility patent. Design patents, of course, are permitted under 35 U.S.C. 171, which provides if you invent a new and original ornamental design for an article of manufacture, you may obtain a patent, therefore. And if, to the extent Mr. Rudy has invented anything new with respect to these five claims, it would be something eligible for a design patent, not a utility patent. Okay, any questions? No. Thank you. Thank you. The Office concludes its argument. Mr. Rudy? Thank you. This is not the case of an old object being subject to a new use, as in Schreiber. This is a novel item. This is not an existing product. And then one must take the case as a whole, and the patent office, the examiner and the board, are using the Gulevac test by, as if it were, shall I say, a hammer, and using it as the per se rule of obviousness, and determining that what is part of what they perceive to be a printed matter is then to be given no patentable weight because of that Gulevac test. What should you replace Gulevac with? Well, you have your own O'Farrell case that preceded the KSR case from the Supreme Court that would say, for example, that the Gulevac test is a rigid test. On the other hand, this court in O'Farrell and the Supreme Court in KSR have determined that this type of a test is more suitable, at least in the line of teaching's suggestion or motivation, to be a useful guideline. The case of OCHOCHI holds that there are to be no per se rules of unpatentability. And I contend that the director has, through the board, used a per se rule of unpatentability by applying or, may I say, misapplying Gulevac by not taking the article, which is novel, as a whole. Okay. Any questions from the jury? Okay. Thank you, Mr. Rudy. And thank you, Mr. Case, for taking this submission.